UNITED STATES of America, Plaintiff,

v.

Charles C. FINN and George C. Finn, Defendants.

No. 23368.

United States District Court S. D. California, Central Division.

May 14, 1955.

Manley J. Bowler, Chief Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Joseph Scott, A. L. Wirin, Los Angeles, Cal., for defendants.

EDWARD P. MURPHY, District Judge.

The defendants in United States v. George C. Finn and Charles C. Finn, Criminal No. 23,368, Southern District of California, move to vacate their sentences under Section 2255 of Title 28 of the United States Code. The only ground stated in the motion is: "That the claim which the United States District Attorney was representing was without validity or substance and that the offense of these defendants was no more than technical at the most".

An application under Section 2255 raises only jurisdictional or constitutional questions. It is coextensive with the jurisdiction of the court passing on an application for a writ of habeas corpus.

There are no grounds stated in the motion which in any way raise any constitutional or jurisdictional questions. The petition inferentially states that their conviction was a miscarriage of justice.

The defendants' guilt, beyond any reasonable doubt, has been established by the entire judicial process. A jury of twelve fellow citizens found the defendants guilty. I, as the trial judge, denied their motion for a new trial. Three Judges of the Circuit Court of Appeals affirmed their conviction. The nine Justices of the Supreme Court unanimously denied their application for a petition for a writ of certiorari.

They are guilty beyond any question of a doubt. The Circuit Court of Appeals, through Judge Chambers, said:

"Of course, in a criminal case a jury has the power to fly in the teeth of the evidence and the law and acquit a defendant; that is something that cannot be taken away from it. Bushell's Case, 124 Eng.Rep. 1006. Were this a civil false arrest case, the facts are so strong that a trial judge probably would have been justified in directing a jury to return a verdict for the plaintiff." 10 Cir., 219 F.2d 894, 900.

Their trial was eminently fair. I leaned over backwards to give the defendants an opportunity to be heard. On appeal they were represented by counsel to whom the Circuit Court gave an unusual accolade—"He brought up almost every point in behalf of defendants that anyone could conceive. His research was good and his persistence, within proper limits, was unabated". There are always minor technical errors in any criminal trial. The problem is whether the substantial rights of the defendants were protected. Here, the Circuit Court held that although the Finns made 24 separate specifications of error in the trial, whatever legal errors there were in the instructions were too favorable to defendants, and that any errors that existed in the admissibility of evidence were on the side of letting the defendants "testify too much about their civil and contempt litigation".

The defendants got more than the general consideration in the appellate process. Although the time to ask for a rehearing before the Appellate Court had expired and therefore the time to apply to the Supreme Court for a writ of certiorari had expired, the Circuit Court withdrew the mandate which made their conviction final. This enabled the de-

fendants to file their petition with the Supreme Court, which was denied.

■ There are no grounds stated in the motion, or any other grounds, to vacate the sentence under Section 2255 of the United States Code. The defendants received a completely fair trial.

Defendants have asked for relief by way of vacation of their sentence. They do not ask that the sentence be modified. However, it is my practice to treat applications regarding sentence, when signed by defendants themselves, as motions for modification of sentence when they are presented to me within the time that I have jurisdiction to act under the Rule. Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. provides that the Court may reduce a sentence within 60 days after the receipt by the Court of a mandate issued upon affirmation of the judgment. The Court of Appeals issued the mandate affirming the judgment on April 18, 1955. It would have been received on April 19, 1955 by the United States District Court for the Southern District of California. I received the defendants' motion on May 13, 1955—within the jurisdictional time limit under the Rule.

I shall review the procedure at the time these defendants were sentenced. At that time I inquired of defendants' counsel whether the defendants wished to make application for probation. Counsel thereafter made such an application on behalf of the defendants. The defendants indicated some reluctance with regard to the motion for probation. After ascertaining that they understood what probation entailed, I told them that the motion was before the Court but if they wished to withdraw it, it was their privilege. After the defendants had discussed it between themselves and with their attorney, they informed me that against the advice of their attorney they did not wish to apply for probation. They are not children, but mature men —at that time 40 years old. They understood the consequences of this action.

I conducted a pre-sentencing hearing in open court and sentenced each defendant to a term of one year's imprisonment in an institution to be designated by the Attorney General. The maximum permissible sentence was a fine of $10,000 or imprisonment for nine years, or both.

What are the considerations which affect a Judge's determination of the sentence to be imposed? Equally important, what considerations must a Judge set aside if he is to conscientiously endeavor to insure equal justice under the law for all? These same considerations apply to modification of the sentence.

Of course it would be an easy thing to fall prey to the idiocy of the moment and give regard to the public clamor that seems to have gripped a segment of the people. But no judge who is worth his salt would yield his well-considered judgment to such a base degree of infamy.

Nor do threats against life, abuse, vituperation, all of which have been heaped upon me largely by the cowardly who write anonymously, cause me to deviate one iota from the plain mandate of the law.

Judges are not automatons; we have a consciousness of what is going on in the world in which we live and breathe and have our being. Indeed, if we did not have it, there would be no life in the law to make it a vibrantly real and glowing instrumentality for justice to all men under constitutional safeguards.

Thus, I am not unaware that the Finns have elected to embark upon a so-called "Hunger Strike". This, of course, I regard as unfortunate. It is unfortunate for them as well as for others similarly confined. But that is their own affair, not mine. Additionally, it is a custodial problem. A wise Congress has expressly provided that Federal Judges exercise no control over incarcerated people absent a proper showing of a deprivation of constitutional rights.

These men simply do not want to remain in jail.

To yield to their demand to free them would be to subject every Judge in the United States, Federal, State and Municipal, to the same pressure that is now brought to bear upon me. It would establish a precedent unheard of in the an-

nals of our history and unthinkable in the theory and practical application of our criminal law.

■ The primary, indeed the highest duty of a judge is to dispense justice. In determination of the sentence to be imposed, this involves considering the nature of the offense, the circumstances under which it was committed and the character and prior history of the defendant.

The offenses which these defendants committed were: (1) a conspiracy to prevent the United States Attorney from discharging his official duties and, (2) forcibly impeding and interfering with the official duties of the United States Attorney by arresting him. These offenses are entirely separate and apart from their civil litigation over the ownership of a war surplus airplane. The civil case was pending in the Southern District of California at the time of defendants' completely unwarranted actions. Prior to the so-called "arrest" of the United States Attorney, Judge Westover had ruled that the defendants were not guilty of civil contempt in taking the plane. After the defendants had committed this offense, Judge Mathes ruled that they were entitled to the airplane.

The problem is not who is entitled to the airplane. The problem is whether a civil litigant can unilaterally decide that he will not submit to the orderly judicial proceedings set up by Congress for the determination of civil controversies, place his interests above the interests of the some 2,000 civil litigants whose cases were likewise pending in that court, place himself above the law and take the law into his own hands.

While I, as a Federal Judge, am perhaps more sympathetic than others toward the problems involved in facilitating the disposition of cases in the Federal Court, this problem cannot be solved by lawless disregard of the judicial process.

The offense is not against the person of the United States Attorney as an individual. These defendants' actions are an affront to, and an attack upon the whole body politic, the United States as a whole. Judge Chambers after illustrating like conduct on the person of the President of the United States or a Supreme Court Justice, said:

"Waters is not President or a justice of the Supreme Court. His private person may be of little importance. His office may not be the most important in the realm. But as a district attorney of the United States the law clothes his office with the same protection as that of the highest in the land. *Persons are not to be lightly permitted to reduce the majesty of the United States government, whose officer Waters was, to the level of a carnival.*"

I deem it advisable in the interest of clarity and thoroughness to review in detail the circumstances surrounding the offense with which the defendants were charged. To accomplish this I can do no better than to quote the language of Judge Chambers:

"The incident resulting in the indictment was a bizarre one. While leaving a bar association luncheon at the Biltmore Hotel in Los Angeles shortly after noon on Thursday, January 21, 1954, Laughlin E. Waters, United States District Attorney for the Southern District of California was stopped by the defendants, informed that he had violated the civil rights of the defendants, and that they were making a citizens' arrest of him. They had a sheaf of papers with them which they exhibited to him, and perhaps read extracts therefrom, but Waters did not read the papers. As part of the so-called 'arrest' they handcuffed him to one of the brother-defendants and took him to the Los Angeles central police station in a police van which one brother summoned after the 'arrest'. They failed to get the police to book Waters or to incarcerate him. No complaint was issued against Waters by anyone in authority and none was sought prior to the incident. It is reasonable to say that in the events Waters did not resist forcibly. But

he did not acquiesce. The defendants brought along for the incident a photographer and a radio broadcaster. It should be said that during the outrage, which it was, the district attorney comported himself with dignity. The events created by defendants took up most of the afternoon and Waters reached his office about 4:30 P. M., the defendants having gone with police officials and Waters to the district attorney's office of Los Angeles County from the police station. There the defendants themselves ended up arrested."

Prior to the so-called "arrest" of Waters, the defendants repeatedly went to Waters' office between the time of his appointment and his "arrest". "They told of their efforts to get Waters to arrest this and that person. In rebuttal Waters revealed the obscene lengths to which one of the defendants went— which was not denied." (Chambers, J. supra.)

This conduct prompted me to remark at the pre-sentence hearing as follows: "By the way you conducted yourselves in that office of the United States Attorney, up there badgering him, in there day in and day out, if I had been the United States Attorney I would have given you short shrift".

Thus, it must be apparent to a person of the meanest apprehension that these defendants openly, notoriously and flagrantly, flaunted the laws of the United States. Their so-called "arrest" of Waters was accompanied by the popping of flash bulbs and the presence of a radio broadcaster.

It is difficult to conceive a more detailed plan and design to subject an officer of the United States Government to obloquy and derision.

Finally, I considered the defendants themselves. It is true that they have served their country in war time. It was this fact which led me to ask whether they desired to apply for probation, and indeed to impose a sentence which when weighed against the maximum sentence, the character of the offense and the circumstances under which it was committed, is not severe. Both defendants demonstrated at the trial, at the pre-sentencing hearing and by their later conduct, that while professing to be champions of the cause of liberty, they do not understand that the benefits of liberty, also carry with them concomitant obligations. We are free and will remain free only so long as the individual citizen, of whatever station or position, does not place himself above the law

I said at the time I sentenced these defendants and I reiterate now: "You have undertaken to assume prerogatives which you do not enjoy, and you have placed yourselves above the law, to which honest men give their descent respect. As I said this morning, I would be extremely derelict in my duty were I to condone such conduct, because your conduct would encourage others to take the law into their own hands, and it is out of such activities as yours that are born the lynch law, banditry and hoodlumism, and unbridled and wanton flaunting of the law. That I will not tolerate, I will not condone, under my oath".

There is no basis for a modification of the sentence.

It is ordered that the defendants' motion be and hereby is denied.