**UNITED STATES of America,
Appellee,**

v.

**Raymond S. HALL, Appellant.**

**No. 9588.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1965.

Decided March 4, 1965.

Rehearing Denied April 1, 1965.

Charles R. Warren, Jr., Danville, Va., and B. A. Davis, Jr., Rocky Mount, Va., for appellant.

Lawrence C. Musgrove, Sp. Asst. to U. S. Atty. (Thomas B. Mason, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, J. SPENCER BELL, Circuit Judge, and HUTCHESON, District Judge.

J. SPENCER BELL, Circuit Judge:

The appellant herein, Raymond S. Hall, was convicted in the district court on July 24, 1964, of violating 18 U.S.C.A. § 372.[1] The indictment in that case charged, among other things, that Hall had conspired with one Dail Thomas Jackson

"and with divers other persons whose names are to the Grand Jurors unknown, to injure the person of Richard E. Artison [an agent of the Alcohol and Tobacco Tax Division of the Internal Revenue Service] on account of his lawful discharge of the duties of his office and while

1. The pertinent provisions of this section read as follows:

"If two or more persons in any State, Territory, Possession, or District conspire to * * * injure him [an officer of the United States] in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined not more than $5,000 or imprisoned not more than six years, or both."

engaged in the lawful discharge thereof and to impede him in the discharge of his official duties." [2]

The district judge sentenced the defendant to serve four years in the custody of the Attorney General, and this appeal followed.

Four issues are raised on this appeal. The defendant charges (1) that there is not sufficient evidence of the conspiracy charged to sustain the jury's verdict of guilty; (2) that the trial court erred in allowing the jury to listen to both a minifon wire recording and a tape copy of the original recording while each juror held in his hand a transcript prepared by Artison, the person who secretly recorded an alleged conversation between him, the defendant, and one Charlie Lee Harris; (3) that error was committed when the district court refused to declare a mistrial after a Government witness referred to alleged efforts by Hall to tamper with the jury in the Corporation Court of Danville, Virginia, which heard and acquitted him of a charge of bribery growing out of the same background incidents involved in the present case; and (4) that the scope of the cross-examination of the defendant allowed by the court below when he took the witness stand to deny his guilt was too broad.

Of course, should we agree with the defendant with respect to assertion (1), he would be entitled to a dismissal of the charges, and a resolution of the other points presented would become unnecessary. We proceed to a discussion of each of the matters assigned by Hall as error.

I.

The evidence of record warranted submitting this case to the jury, and we think it is entirely adequate to sustain the verdict which the jury returned. There was testimony by one Dail Jackson, all of which was denied by the defendant, that he went to Hall's house [3] at about dark on March 19, 1963, to report to Hall that he had learned that a man they knew as Billy Anderson (the fictitious named used by agent Artison in the Danville area) was in fact a Government undercover agent. Jackson was alarmed by this discovery because he had been delivering to a man he knew as Anderson bootleg whiskey which had been purchased by Charlie Lee Harris, a local illegal whiskey dealer that Jackson discovered was also a paid Government informer. According to Jackson, upon being advised of the true identity of Artison and Harris, Hall instructed him

"to go see Charlie Lee [Harris] and see if I [Jackson] could sell him some more whiskey and if I could to notify him [Hall] and that *he would take care of it.*" (Emphasis supplied.)

Following this conversation, Jackson reportedly tried to locate both Harris and the undercover agent but was unsuccessful because both of them had suddenly left Danville.

The jury's verdict would seem to indicate that they believed Jackson's story about the alleged nocturnal visit and discredited Hall's denial. This being true, the jury could reasonably infer from Hall's statement that he would "take care of it" if Jackson could ar-

2. In addition to this conspiracy charge, the indictment contained a second count which charged Hall with a conspiracy to remove, conceal, transport, and possess nontaxpaid liquor in violation of 18 U.S. C.A. § 371. A motion by the defendant's counsel to sever the two counts for trial was granted on March 20, 1964, and thereafter the court ordered the defendant to trial on the count quoted above. The other count was left for future setting and trial, and we are advised that no

action has thus far been taken with regard to it.

3. Jackson's reason for contacting Hall is revealed in this statement from his testimony: "Over the years I have got to know him [Hall] real well. He was a police officer and I was breaking the law and I come in contact with him most every day you know." At the time of his arrest, Hall had been a member of the Danville police force for more than fourteen years.

range for a sale of whiskey to Artison and Harris and advise him of the pickup place that Hall planned at least to interfere with the discharge by Artison of his official duties by arresting him [4] and perhaps that he had in mind harming Artison physically. There is authority for the proposition that an agreement to interfere with a Government officer's performance of his official duties by causing him to be arrested unlawfully is a violation of 18 U.S.C.A. § 372.[5] Finn v. United States, 219 F.2d 894 (9 Cir.), cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242 (1955). Nor is the result in this case altered in any way by the fact that in spite of the acts of Jackson in furtherance of the conspiracy, the illegal agreement was not accomplished. It has long been settled that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses, each of which Congress may make punishable. See, e.g., Pinkerton v. United States, 328 U.S. 640, 643, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

## II.

A key item of evidence introduced at Hall's trial was a secret mechanical recording plus a tape copy and transcript of an alleged conversation between Artison, Harris, and the defendant early on the morning of March 18, 1963, in a police car then being operated by Hall. It was during this conversation that Hall allegedly took a $50.00 bribe from Artison.[6] The conversation was originally recorded on minifon wire, but because this wire was extremely fragile, a tape copy of the original recording was immediately made. From this tape copy, agent Artison prepared a transcript of the conversation in which he identified the various speakers. A copy of this transcript was given to each juror when the mechanical recordings were played at the trial. Although they did not attempt to show that there was any conflict between the original minifon wire and the tape copy, counsel for the defendant refused to stipulate that the tape was a true copy of the original recording. Since it wanted the jury to have a transcript of the conversation and since the transcript Artison prepared was from the tape copy, the Government asked for and received, over the defendant's objection, permission from the court to play both the minifon wire and the tape copy while the jurors followed the conversation with their transcripts.

■ The defendant does not appear to challenge the playing of the original wire recording to the jury. He contends, however, that the subsequent playing of the tape copy was improper and that the court should not have permitted the jury to receive the written transcript of the conversation prepared by agent Artison. Two objections are interposed by the defendant to the playing of the tape copy: (1) that allowing the jury to hear both the original recording and the copy placed unwarranted emphasis upon this evidence, and (2) that the inaudible segments of this tape were so substantial that the exclusion of the entire tape as untrustworthy was required. We do not think the rulings of the district judge on either point amounted to an abuse of his discretion. Regarding point (1), we also observe that the asserted prejudice about which the defendant now complains resulted primarily from the conduct of his own counsel.[7] As to point (2), we note

4. Accepting the Jackson story as true, such an arrest by Hall would have been with knowledge that Artison was a Government undercover agent and not an ordinary participant in the illegal whiskey trade.

5. Jackson testified that after learning of their true identity, he wanted Harris and Artison "caught" and that he sought

Hall's assistance to see that this was done. He also indicated that he understood that if he followed Hall's instructions, "he [Hall] would be there to catch them."

6. Hall denied having ever taken a bribe from Artison or anyone else.

7. It appears that both the original recording and the tape copy were played in

that while perhaps as much as twenty-five per cent of the conversation between the parties was inaudible, all that portion of the discussion relating to the offer and acceptance of the alleged bribe was clear and audible. Cf. Addison v. United States, 317 F.2d 808, 815 (5 Cir. 1963), cert. denied, 376 U.S. 905, 84 S. Ct. 658, 11 L.Ed.2d 605 (1964) (recording approximately one-half of which was inaudible held properly admitted in evidence).

██ Nor do we think the district court handled the transcript incorrectly. The transcript served to assist the jury in following the conversation by identifying the various speakers; had it not been for this device, it would have been necessary for Artison to constantly interrupt the playing of the tape to indicate which of the parties had made a particular statement. This would seem to us to be a matter clearly within the province of the trial judge's discretion. The defendant maintains, however, that by allowing the transcript to be used, Artison was corroborating his own previous statement by giving his translation of the recording. Our answer to this contention is that we think this transcript had a corroborative effect similar to that which any photograph, drawing, or mechanical model has when used by a witness to amplify his testimony. Cf. People v. Feld, 305 N.Y. 322, 113 N. E.2d 440, 444 (1953). Cross-examination is always available to a party to show that the transcript or picture or model does not accurately represent the witness' version of the facts in issue. The only case cited by the defendant in which transcribed material was excluded

is United States v. Schanerman, 150 F.2d 941 (3 Cir. 1945). That case involved transcribed notes prepared by a stenotype operator from hearing the mechanical recordings repeatedly played, a situation factually distinguishable from the instant case. Furthermore, the court there did not indicate why it was proper to exclude the transcribed notes. For these two reasons, then, we decline to regard the Schanerman decision as controlling authority.

We hold that the trial judge's rulings pertaining to the mechanical recordings of the conversation and the transcript prepared by Artison were proper.

### III.

During the direct examination of Dail Jackson, who had been called by the Government, he testified that prior to the defendant's state court trial for and acquittal of a charge of bribery, Hall had contacted him and asked him if he knew any of the people whose names were on the state court jury list. Jackson said that he told Hall that he did not know any of the prospective jurors. In response to an inquiry as to whether Hall asked him for anything else and over an objection by the defendant, Jackson also stated:

"Well they [Hall and others] were trying to get to the jury and wanted to know if I could help them but I don't know that they ever did and I didn't help them. * * * I never did anything."

This line of questioning prompted Hall's counsel to ask that the jury be excused until after a discussion about the propriety of any further reference to

chambers in the presence of the judge, counsel for the Government, and counsel for the defendant. At the same time the transcript prepared by agent Artison was compared with the recording from which it was made. There was never an objection that the transcript was inaccurate, and, as previously pointed out, counsel for the defendant did not attempt to show that there was any conflict between the original recording and the tape copy.

However, defense counsel refused to stipulate that the tape copy was a true copy of the original recording, even though by doing so, they could have eliminated the playing of the tape copy. In the absence of a stipulation by Hall's attorneys, the court permitted the jury to hear both the original recording and the tape copy so that they could make their own determination about the accuracy of the copy.

events which preceded the state court trial. During this discussion, Hall's counsel moved for a mistrial. After hearing the arguments of counsel, the district judge denied the motion for a mistrial and ruled that what had transpired prior to Hall's state court bribery trial was not a proper part of the case in the federal court. After allowing the district attorney to complete his examination of Jackson on this point for the record on appeal, the judge recalled the jury and instructed them that they were to disregard any suggestion of jury tampering in the prior proceeding and to restrict their consideration solely to the charge of conspiracy.

 We find no error in the district judge's handling of this aspect of the trial. Jackson's testimony in the presence of the jury was stopped before he had an opportunity to state what else Hall had done prior to the bribery trial other than to inquire about his knowledge of prospective jurors.[8] The district attorney argues with some cogency that testimony about the alleged jury tampering in the state proceeding was proper because the defendant had opened up this subject by bringing out on two occasions before Jackson took the stand that there had already been a trial for bribery at which the defendant was acquitted in a very short time. Whether or not the court's ruling on the "opening up" point was correct, we do not think that Jackson's references to possible jury tampering in the earlier proceeding, when considered in conjunction with the cautionary instructions given by the district judge, so prejudiced the jury against Hall that the declaration of a mistrial was required.

### IV.

 It is settled law that the scope of cross-examination is generally a matter within the sound discretion of the trial judge, Chinn v. United States, 228 F.2d 151, 154 (4 Cir. 1955), and appellate courts are reluctant to set aside lower court judgments upon an assertion that the examination of a witness (even though that witness be the defendant) was permitted to range too far afield. Even so, there is no dispute that there are some limits to what a witness may be questioned about on cross-examination. One of these limits is the well-recognized rule that the prosecution in a criminal proceeding may not seek to establish, either by cross-examination of the defendant himself or by the independent testimony of other witnesses, that it is likely that the accused is guilty of the offense with which he is presently charged because he has committed prior criminal acts. Michelson v. United States, 335 U.S. 469, 475, 69 S.Ct. 213, 93 L.Ed. 168 (1948); 20 Am.Jur. Evidence § 309 (1939); see also Note, 78 Harv. L. Rev. 426, 435–443, 449–451 (1964). However, the rule excluding evidence of prior collateral criminal offenses is subject to several important exceptions, one of which is that prior offenses are admissible to show a motive inducing the commission of the crime for which the defendant is presently being prosecuted. 20 Am.Jur. supra at § 313; 1 Wigmore, Evidence §§ 215–216 (3d ed. 1940).

The present defendant complains that the limits upon proper cross-examination were not respected at his trial when the court, over proper objection, allowed the district attorney to question him about having accepted "protection" money from certain designated people on occasions in the past. Hall maintains that this line of questioning permitted the Government, contrary to a settled rule of evidence in criminal cases, to place his character in issue at a time when he had not yet raised the question of his good character. The Government argues that

8. In testifying for the record on appeal, Jackson said that Hall had asked him for money to pay off two of the jurors at the state court trial with the understanding that if he helped Hall with the state court jury, Hall would help him get to a juror (Bobby Otison) in Jackson's trial in the federal court for possessing and transporting nontaxpaid whiskey.

the inquiry about other illegal acts was a proper one because the receipt of "protection" money in the past would establish a motive for Hall to desire to "take care of" anyone whose activities might threaten the termination of this source of income.

On direct examination Hall was asked whether he at any time had accepted any money from either Harris or Artison; he denied ever having done so. He also denied that it was his voice on the minifon wire and the tape copy which were played for the jury and which included an alleged statement by him that "you know yourself, Charlie [Harris], I've never fooled with any of you fellows, you know that." On cross-examination Hall was asked, over objection by his counsel, whether he had ever taken a bribe from any bootlegger or gambler; he replied, "I have never received, accepted or taken money from anyone in my life as a bribe." He then denied ever having borrowed or accepted money from certain specific people. In rebuttal the Government put on several of these people as witnesses, and they testified that for some time prior to the activities involved in this case, they had been paying Hall money to forestall police interference with their illegal ventures.

■ After a review of the transcript, the pertinent authorities, and the arguments of counsel both in their briefs and before us personally on this point, we

think the Government was entitled to question Hall and to put on evidence pertaining to prior bribes he allegedly had received for the purpose of showing a possible motive for him to enter into a conspiracy to injure Artison or interfere with the discharge of his official duties. Cf. United States v. Puff, 211 F.2d 171, 175 (2 Cir.), cert. denied, 347 U.S. 963, 74 S.Ct. 713, 98 L.Ed. 1106 (1954); Thompson v. United States, 144 F. 14, 18–19 (1 Cir. 1906); State v. Pittman, 137 S.C. 75, 134 S.E. 514, 520–521 (1926). That the evidence of prior collateral offenses which was properly received on the question of motive might also have tended to cause the jury to wonder about the defendant's general character did not entitle him to have that evidence excluded, despite the fact that at the time this evidence was received the defendant had not placed the status of his character in issue. Cf. United States v. Glory Blouse & Sportswear Co., 158 F.2d 880, 881–882 (2 Cir. 1947); United States v. Pugliese, 153 F.2d 497, 499 (2 Cir. 1945). There was no error on the part of the trial judge in his rulings on this question.[9]

## V.

Having carefully considered each of the defendant's allegations of error and having upheld the ruling of the trial judge on each point, we affirm the judgment of the district court.

Affirmed.

9. Our decision on this point is buttressed by the following statements prepared by defendant's attorneys and included in Judge Michie's charge to the jury: "No amount of testimony pertaining to the defendant dealing in non-taxpaid whiskey and no amount of testimony pertaining to the defendant accepting bribes from any whiskey dealer, as offered in this case, would by itself justify you in convicting the defendant. The testimony with reference to the defendant dealing in non-taxpaid whiskey, and the testimony with reference to the defendant accepting bribes from various whiskey dealers is admitted in this case for the purpose of showing you the background that existed according to the Government's contention and further for you to consider as to whether it might or might not have furnished the defendant a motive and reason for entering into the conspiracy as alleged in the indictment."