## Commonwealth v. Ramos

*Joseph Stauffer,* for Commonwealth.
*John J. Waldron,* for defendant.

STEINBERG, *J.,* February 19, 2008—On October 11, 2006, the defendant, Gilberto Ramos, was arrested and charged with criminal use of a communication facility,[1] delivery of a controlled substance,[2] possession with intent to deliver a controlled substance,[3] and possession of a controlled substance.[4] His arrest followed a drug investigation that utilized a confidential informant to purchase drugs from the defendant.

On December 6, 2007, counsel for the defendant filed a "motion in limine with respect to two tapes and transcripts the Commonwealth intends to introduce at trial." It is alleged in that motion that intercepted communications between the defendant and the confidential informant, as well as an intercepted prison telephone conversation of the defendant's are inadmissible because the conversations are inaudible, the voices have not been properly authenticated, and the confidential informant's statements are hearsay. It is also alleged that the transcripts are "inconsistent" with the conversations.

On December 10, 2007, counsel for the defendant also filed a "motion to suppress." It is alleged in that motion that Officer Pedro Cruz, who identified the defendant's voice on the intercepted conversations, should be precluded from doing so at trial.

---

1. 18 Pa.C.S. §7512(a).
2. 35 P.S. §780-113(a)(30).
3. 35 P.S. §780-113(a)(30).
4. 35 P.S. §780-113(a)(16).

## BACKGROUND

On June 20, 2006, Officer Pedro Cruz of the Allentown Police Department, with the assistance of a confidential informant, arranged a controlled purchase of cocaine from the defendant. The transaction was originally to be completed inside the confidential informant's residence at 329 North 9th Street in the City of Allentown.

The implementation of the controlled purchase commenced with the confidential informant's phone call to the defendant. Although the confidential informant reached the defendant, the transaction was delayed because the defendant's slumber had not reached its completion. As a result, a second phone call was placed at 1:10 p.m., and the defendant told the confidential informant that he was en route to secure the drugs. It was agreed that after securing the drugs, the transaction would take place at the confidential informant's apartment.

The defendant arrived in a white Chevrolet Suburban at approximately 1:30 p.m. and alerted the confidential informant to his arrival. The police, who were conducting surveillance, also witnessed the arrival of the Chevrolet Suburban outside 329 North 9th Street. Officer Cruz observed the defendant, who is also known as "G-Bay," exit the front passenger seat. The defendant was known to him by virtue of a mugshot, as well as knowledge that the defendant was wanted by law enforcement.

The defendant approached Officer Cruz's undercover vehicle with its tinted windows, looked inside, and then returned to the Chevrolet Suburban and drove away. Moments later, the defendant called the confidential informant, and tried to convince him to complete the

transaction at a nearby laundromat. The confidential informant declined because he had his son with him, and tried to convince the defendant to return to the apartment. A short time later, the white Suburban returned to 329 North 9th Street and the confidential informant entered the vehicle, and the transaction was completed. Following the completion of the drug transaction, the confidential informant handed the cocaine to Officer Cruz.

The conversations between the defendant and the confidential informant were intercepted with the use of recording devices. Officer Cruz testified at the hearing in this matter that he recognized the voice of the defendant on the intercepted conversations. He was able to render that opinion because after the defendant's arrest, Officer Cruz interviewed the defendant for approximately 30 to 40 minutes. He also confirmed his opinion based upon intercepted prison telephone conversations of the defendant.

## DISCUSSION

### I. *Motion in Limine*

The audiotapes and the transcripts of those tapes have been reviewed to determine their audibility. The alleged conversations between the defendant and the confidential informant regarding the drug transaction are contained on multiple audiotapes.[5] The other audiotape is a recorded telephone conversation of the defendant's from

---

5. Commonwealth exhibit 1. Additionally, after inquiry by this court, additional audiotapes were submitted to this court for review. This post-hearing submission was by agreement of counsel.

prison.[6] The purpose of the second tape, according to the Commonwealth, is to aid the jury in identifying the defendant's voice on the first tape.

The authenticity of the tapes requires consideration of Officer Cruz's testimony. Specifically, the admissibility of the methodology he used to render the opinion that it was the defendant who was speaking to the confidential informant.

## A. Audibility of the Tapes

The tapes have been provided by the Commonwealth for this court's listening pleasure. Having done so, it is this court's opinion that the intercepted conversations on all tapes satisfy the legal requirements for audibility. The recorded telephone conversations and the body wire tapes are audible. A small portion of the body wire is unintelligible, but that has more to do with the participants to the conversation, rather than the audibility of the tape. Additionally, a small portion is in Spanish, and although this court did not understand the conversation, it was audible. The second tape with the recording of the prison telephone call contains static, but the defendant's voice is easily heard and comprehended. There are some limited portions on the second tape that are unclear, but these portions are also attributable to the person with whom the defendant is speaking rather than audibility.

The admissibility of sound recordings is within the sound discretion of the trial court. *Commonwealth v. Leveille,* 289 Pa. Super. 248, 253, 433 A.2d 50, 52 (1981). See also, *U.S. v. Jackson,* 649 F.2d 967, 977 (3d Cir.

---

6. Commonwealth's exhibit 2.

1981). Recordings are admissible "unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." *U.S. v. Dimatteo,* 2008 WL 186218, action no. 07-230 (E.D. Pa. January 17, 2008) (quoting *U.S. v. DiSalvo,* 34 F.3d 1204, 1220 (3d Cir. 1994)). Additionally, other jurisdictions have admitted recordings "notwithstanding some ambiguity or inaudibility as long as the recordings are probative." *U.S. v. Arango-Correa,* 851 F.2d 54, 58 (2d Cir. 1988). However, no litmus test has been established regarding the extent of inaudibility prior to concluding a tape is untrustworthy. For example, in *Dimatteo* the tapes were deemed admissible where one witness testified that 90 percent of the tape recordings were audible and another stated that the majority was audible. *Dimatteo* at *7. In *U.S. v. Hall,* 342 F.2d 849, 853 (4th Cir. 1965), *cert. denied,* 382 U.S. 812 (1965), a tape was held admissible even though as much as 25 percent of the tape was inaudible, but the portion of the tape relating to the offer and acceptance of a bribe was audible.

The tapes reviewed by this court are almost completely audible. The confidential informant and everyone he spoke with are understandable. The body wire tape commenced at 1:11 p.m. and ended at 1:55 p.m., without any reason to believe that the recording is untrustworthy. As a result, the defendant's claim regarding audibility is without merit.

### B. Identification of the Defendant's Voice on the Tapes and Motion To Suppress

The identification of the defendant's voice on the tapes and the methodology used by Officer Cruz to make the

identification are intertwined. As a result, both of these issues will be discussed together.

In order to authenticate a tape for its admissibility, the recording must be: (1) identified as authentic and correct; (2) the recording device must be capable of taking the conversation and the operator of the device must be competent to operate it; (3) no changes, additions or deletions have been made to the recording; (4) the recording must be preserved in a manner that is shown to the court; (5) the conversation elicited must be made voluntarily and in good faith; (6) the speakers are identified. *U.S. v. Starks,* 515 F.2d 112, 121 (3d Cir. 1975). Here, the defendant is only contesting the identification and methodology for identification of the speakers. The Commonwealth meets its required showing if it "produces evidence sufficient to convince a reasonable jury by a preponderance of the evidence that the defendant is the speaker in order to permit a jury to hear the tape recordings." See *Dimatteo* at *4 n.5 (quoting *U.S. v. Tubbs,* 1990 WL 27365 at *3 (E.D. Pa. 1990)).

The identity of a speaker on an audiotape may be identified by a person who recognizes the voice on the tape recording as belonging to a certain individual. In order to accomplish the identification in this manner the Commonwealth must lay a foundation that the witness has a basis for familiarity with the voice he is identifying. See Pa.R.E. 901(b)(5). See *Commonwealth v. Carpenter,* 472 Pa. 510, 372 A.2d 806 (1977) (identification by acquaintance who then passed receiver to officer); see also, *U.S. v. McCartney,* 264 F.2d 628 (7th Cir. 1959) (police officer can identify voice after hearing voice several times over the telephone and talking to defendant

once in person). Here, Officer Cruz can identify the voice of the defendant on the tape because he has heard the voice of the defendant on several occasions. Officer Cruz overheard the defendant speak with the confidential informant on June 20, 2006, he reviewed the tape recording of the conversations between the defendant and the confidential informant on several occasions, and he spoke with the defendant for 30 to 40 minutes at the police station on October 11, 2006. In addition, Officer Cruz has listened to approximately 20 telephone conversations involving the defendant from prison. Each of these prison telephone conversations were about 15 minutes in length. These experiences give Officer Cruz the requisite familiarity with the defendant's voice to offer identification testimony at trial.

It is noteworthy that other courts have permitted voice identification testimony even in cases where the identifying witness had only a very brief conversation with the accused. See *U.S. v. Vento,* 533 F.2d 838, 864-65 (3d Cir. 1976). The frequency of the contact between the witness and the defendant goes to the weight of the evidence, not to its admissibility. Hence, it is in the province of the jury to decide whether Officer Cruz's prior interactions with the defendant are a sufficient basis to identify the defendant's voice. *State v. Sarinske,* 280 N.W.2d 725 (Wis. 1979). Identification testimony is admissible where police officer identifies defendant's voice on telephone call where officer only had interaction with defendant via in-person conversations, and jury decides trustworthiness of identification).

In addition to Officer Cruz's identification, we find that the circumstances surrounding the tape-recorded

conversations are sufficient to identify the defendant as the speaker on the audiotape. Officer Cruz testified at the hearing that the defendant telephoned the confidential informant at 1:30 o'clock p.m. to announce his arrival at 329 N. 9th Street, Allentown. Contemporaneous with this telephone call, Officer Cruz witnessed a white Chevrolet Suburban pull up in front of the address. Officer Cruz recognized the individual that exited the Suburban as being the defendant. Thereafter, following a subsequent telephone conversation between the defendant and the confidential informant, the defendant picked up the confidential informant in the white Chevrolet Suburban in front of 329 N. 9th Street, and the drug transaction was completed. Accordingly, the conversations on the tape of June 6, 2006, revealed a plan of action, which was later carried out by the defendant. These communications, along with Officer Cruz's visual identification of the defendant, serve as circumstantial evidence that the defendant is the speaker on the audiotape. As a result, the identification of the speakers becomes a factual issue for the jury. *Dimatteo* at *4.

Accordingly, the pretrial motions to preclude testimony regarding the defendant's voice on the tapes are denied.

### C. Alleged Hearsay on Tapes

Hearsay is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). The defense contends that the statements of the confidential informant on the tapes, who apparently is not available for trial, are hearsay.

This issue has been vetted and rejected in *U.S. v. Hendricks,* 395 F.3d 173 (3d Cir. 2005); see also, *U.S. v. Peak,* 2006 WL 1030226, action no. 05-510 (E.D. Pa. April 18, 2006). The contention that "surreptitiously monitored conversations" constitute "testimonial hearsay" as explained in *Crawford v. Washington,* 541 U.S. 36 (2004), was not endorsed in *Hendricks, supra.* A corollary defense argument, however, is that even though the defendant's statements are nontestimonial, the confidential informants' statements are hearsay. *Hendricks, supra,* was required to address that issue in light of the confidential informant's murder. Finding no hearsay problem because the informant's statements were introduced for a purpose other than establishing the truth of the matters contained therein the court further explained:

"We thus hold that if a defendant or his or her co-conspirator makes statements as part of a reciprocal and integrated conversation with a government informant who later becomes unavailable for trial, the confrontation clause does not bar the introduction of the informant's portions of the conversation as are reasonably required to place the defendant or co-conspirator's nontestimonial statements into context." 395 F.3d at 183.

For the foregoing reasons, the statements of the confidential informant on the tapes may be admitted upon proper authentication.

## D. Transcripts of Audiotapes for Trial

The use of transcripts to assist the jury in understanding the audiotapes is not a novel concept. *U.S. v. Lawson,* 347 F. Supp. 144, 148 (E.D. Pa. 1972). See also, *Com-*

*monwealth v. Hashem,* 363 Pa. Super. 111, 139, 525 A.2d 744, 758 (1987), *rev'd on other grounds,* 526 Pa. 199, 584 A.2d 1378 (1991). The court in *Dimatteo* explained the purpose and use of transcripts in the following manner:

"The Third Circuit has permitted the use of transcripts to assist the jury while listening to tape recordings.

"Moreover, it is within the trial judge's discretion to admit transcripts for use with the recordings. As these transcripts are not being admitted as evidence in and of themselves, this court will only require that they be accurate representation of the tape recordings." *Dimatteo* at *7. (internal citations omitted)

Any use of transcripts requires the trial court to provide the jury with cautionary instructions, so that the jury understands that the audiotapes are the evidence, and the transcript is a guide. In fact, with the necessary instructions, the tape and transcript may be utilized by the jury during deliberations. *Commonwealth v. Bango,* 560 Pa. 84, 742 A.2d 1070 (1999).

The problem with the Commonwealth's transcript of the drug transaction is that it is incomplete. The transcript ends, but the tape continues for a few minutes. As a result, the Commonwealth needs to prepare a new and complete transcript prior to its use at trial. Additionally, although the current transcript is an accurate representation as far as it goes, there are errors in the transcript. This court suggests that *prior* to submitting another transcript at trial, that the Commonwealth conduct a thorough review of the transcript with defense counsel to avoid similar problems.

For all the foregoing reasons, the use of proper transcripts will be permitted.

## ORDER

And now, February 19, 2008, upon consideration of the defendant's "motion in limine with respect to two tapes and transcripts the Commonwealth intends to introduce at trial" and "motion to suppress", and after hearing thereon; it is hereby ordered that said motions are denied.*

---

\* Pursuant to this opinion, the Commonwealth is permitted to submit a more accurate and complete transcript of the intercepted conversations.