# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

MORRIS DUANE BUCKLES,
            *Defendant-Appellant.*

No. 08-36031

D.C. Nos.
4:08-cv-00075-SEH
4:03-cr-00090-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
November 2, 2010—Portland, Oregon

Filed June 2, 2011

Before: William A. Fletcher and Raymond C. Fisher,
Circuit Judges, and David C. Bury, District Judge.*

Opinion by Judge William A. Fletcher

---

*The Honorable David C. Bury, United States District Judge for the
District of Arizona, sitting by designation.

7247

## COUNSEL

Lori Anne Harper Suek, OFFICE OF THE UNITED STATES ATTORNEY, Billings, Montana, for the appellee.

David F. Ness, FEDERAL DEFENDERS OF MONTANA, Great Falls, Montana, for the appellant.

## OPINION

W. FLETCHER, Circuit Judge:

Federal prisoner Morris Buckles appeals the district court's dismissal of his 28 U.S.C. § 2255 motion as untimely. Buckles argues that our order recalling the mandate so that we could consider his motion for appointment of certiorari counsel restarted the clock for the 90-day period within which he was required to petition the Supreme Court for certiorari review of his conviction on direct appeal. If our order restarted the clock, Buckles's petition for certiorari was timely. If the petition was timely, his subsequent § 2255 motion was timely as well. Conversely, if his petition for certiorari was untimely, so was his § 2255 motion. In the event that his § 2255 motion was untimely, Buckles contends in the alternative that misconduct by his attorney and misinformation provided by someone in the office of the Ninth Circuit Clerk entitle him to equitable tolling.

We hold that our order recalling the mandate did not restart the clock for purposes of petitioning for certiorari. Buckles's petition for certiorari and, in turn, his § 2255 motion, were therefore untimely. However, Buckles's contention that this court's Clerk provided him with inaccurate advice, if true, may entitle him to equitable tolling. We therefore vacate the dismissal of his § 2255 motion and remand for further proceedings.

## I.   Background

After a bench trial in the District of Montana, Buckles was convicted of possession of methamphetamine with intent to distribute and possession of marijuana with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). He was sentenced to concurrent terms of 120 months. On February 12, 2007, we affirmed. *United States v. Buckles*, 220 F. App'x 631 (9th Cir. 2007). On March 2, 2007, 18 days after the entry of judgment, Buckles, through counsel, petitioned for panel rehearing and/or rehearing en banc. Although the petition was four days late, *see* Fed. R. App. P. 35(c), 40(a)(1), our Clerk exercised her discretion under General Order 6.3a to file the late petition. *See* Fed. R. App. P. 35(c); Adv. Comm. Note 1 to 9th Cir. R. 35-1 to 35-3; 9th Cir. Gen. Order 6.3a ("Upon motion or *sua sponte*, the Clerk may grant one (1) initial extension of time of no more than seven (7) calendar days for the filing of a petition for rehearing or petition for rehearing en banc in cases in which the petition must be filed within fourteen (14) days from entry of judgment."). We denied panel rehearing and rehearing en banc on April 3, 2007. The mandate issued on April 11, 2007. *See* Fed. R. App. P. 41(b).

Buckles, then incarcerated, sought to petition the United States Supreme Court for certiorari, but could no longer afford to pay his retained counsel. Buckles was aware of Ninth Circuit Rule 4-1(e), which provides:

> In cases in which a defendant who had retained counsel . . . wishes to file a petition for writ of certiorari in the United States Supreme Court . . . and is financially unable to obtain representation for this purpose, this Court will entertain a motion for appointment of counsel within 21 days from . . . the denial of rehearing. It is the duty of retained counsel to assist the client in preparing and filing a motion for appointment of counsel and a financial affidavit under this subsection.

On April 24, 2007 — the 21st day after we denied rehearing — Buckles mailed counsel a letter "officially requesting that you assistance [sic] me in filing a motion for appointment of counsel to the Ninth Circuit so that I can have an attorney file a writ of certiorari . . . . I am making this request to you pursuant to Ninth Circuit Rule 4-1(e)." On the same day, Buckles forwarded a copy of this letter to our Clerk. On May 3, 2007, Buckles mailed our Clerk a pro se motion styled a "Supplemental Motion for Appointment of Counsel to File a Petition for Writ of Certiorari." Buckles stated in his "supplemental motion" that he had telephoned counsel and had requested assistance in moving for appointment of counsel. Buckles stated that counsel "informed [him] that he had to check into the procedure that he would have to follow, and asked [Buckles] to check back with him later." Buckles stated that he subsequently made "many" unsuccessful attempts to contact counsel. In his May 3 "Supplemental Motion," Buckles asked us to construe his April 24 letter as a timely Rule 4-1(e) motion to appoint counsel.

On June 12, 2007, we issued a one-paragraph order that read as follows:

> We recall the mandate in this case to consider Buckles' supplemental motion for appointment of counsel. We grant his request to construe his letter filed April 24, 2007 as a timely motion to appoint counsel under Ninth Circuit Rule 4-1(e). So construed, we DENY the motion.

The mandate reissued on June 20, 2007.

On September 5, 2007, Buckles filed a pro se petition for certiorari with the Supreme Court. On September 14, 2007, the Supreme Court Clerk wrote a letter to Buckles stating that his petition had been "filed . . . and placed on the docket September 14, 2007 as No. 07-6495." The letter then stated that Buckles's petition "was due July 2, 2007; therefore the peti-

tion was filed with a notation as to its untimeliness." It appears that the Supreme Court Clerk believed that the time to file Buckles's petition for certiorari had begun to run on April 3, 2007, when our court denied rehearing, and thus expired 90 days later, on July 2, 2007. *See* Sup. Ct. R. 13(3) ("[I]f the lower court appropriately entertains an untimely petition for rehearing . . . the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing."); Sup. Ct. R. 13(1) (90-day deadline for certiorari review).

On September 20, 2007, Buckles, still pro se, filed a declaration with the Supreme Court Clerk stating that on June 4, 2007, his sister Bonnie Weinberger had telephoned the office of the Clerk for the Ninth Circuit to inquire about the status of his Rule 4-1(e) motion. Buckles declared that "the Clerk for the Ninth Circuit Court of Appeals told Bonnie Weinberger that the timeline for filing the Writ of Certiorari would be stayed until a ruling was made on the Petition for Appointment of Counsel and a new mandate date would be issued." Buckles declared that he interpreted the statement to his sister to mean that he needed to file his petition for certiorari within "90 days of the recalled mandate from the Ninth Circuit" — meaning, in Buckles's view, 90 days from June 12, the day our court recalled the mandate in his case. The Supreme Court Clerk did not respond to Buckles's declaration. The Supreme Court denied Buckles's petition for certiorari without explanation on October 15, 2007. *Buckles v. United States*, 552 U.S. 982 (2007) ("Petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit denied.").

Buckles filed a pro se § 2255 motion in the district court on October 13, 2008. The district court held that the motion was untimely and dismissed it with prejudice. We granted a certificate of appealability limited to the timeliness question, granted Buckles's motion to proceed *in forma pauperis*, and appointed counsel. This appeal followed.

## II.  Standard of Review

We review the dismissal of a § 2255 motion on timeliness grounds *de novo*. *United States v. Battles*, 362 F.3d 1195, 1196 (9th Cir. 2004) (citing *Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003)). When the facts are not disputed, we review a request for equitable tolling *de novo*. *United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045 (9th Cir. 2010) (citing *Battles*, 362 F.3d at 1196).

## III.  Discussion

## A.  Timeliness

**[1]** Section 2255 provides that "[a] 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from . . . the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). *See also Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009) (same); *Aguirre-Ganceda*, 592 F.3d at 1045 (same). Determining whether Buckles's § 2255 motion was timely therefore requires us to ascertain the date on which his conviction became final. That task, in turn, requires us to identify the date on which Buckles's petition for certiorari was due. If his petition for certiorari was timely, his conviction became final when the Supreme Court denied the petition. That date was October 15, 2007. If his petition for certiorari was untimely, his conviction became final ninety days after we denied rehearing. That date was July 2, 2007. For the reasons that follow, we conclude that Buckles's petition for certiorari was untimely, and that the one-year limitations period for his § 2255 motion therefore ran from July 2, 2007. Consequently, Buckles's § 2255 motion, filed on October 13, 2008, was not timely.

**[2]** Supreme Court Rule 13(1) provides that "a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by . . . a United States court of appeals . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." Supreme Court Rule 13(3) elaborates:

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice). But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment.

**[3]** In Buckles's case, the 90-day clock initially began to run on February 12, 2007, when this court affirmed his conviction. The clock restarted on April 3, 2007, when this court denied rehearing after "appropriately entertain[ing]" Buckles's late petition. Sup. Ct. R. 13(3); 9th Cir. Gen. Order 6.3a. *See Young v. Harper*, 520 U.S. 143, 147 n.1 (1997) (90-day clock runs from denial of late petition for rehearing that appellate court treats as timely and considers on the merits). Buckles argues that the panel's order of June 12, 2007, recalling the mandate restarted the 90-day clock once more, so that his September 5, 2007 petition for certiorari was timely. In Buckles's view, we recalled the mandate in order to extend his time to petition for certiorari. This is true, Buckles argues, because we simultaneously denied his motion for appointment of counsel and we could not have expected him to prepare and file a pro se petition in the three weeks remaining before July 2, 2007. *Cf. Finn v. United States*, 219 F.2d 894, 904 (9th Cir.

1955) (per curiam) (court withdrew mandate to give pro se defendants-appellants additional time to petition for certiorari). To buttress his argument, Buckles points to the advice that he declares was given to his sister by someone in our court's Clerk's office.

**[4]** Our order recalling the mandate had neither the intent nor the effect that Buckles attributes to it. The text of the order gives no indication that we recalled the mandate for any reason other than that expressly stated, namely, the consideration of Buckles's Rule 4-1(e) motion. Some post-judgment actions by a lower court — for example, those that "raise the question whether the court will modify the judgment and alter the parties' rights" — do toll the certiorari clock. *Hibbs v. Winn*, 542 U.S. 88, 98 (2004) (appellate court's sua sponte recall of mandate and consideration of rehearing). *See also, e.g.*, *Limtiaco v. Camacho*, 549 U.S. 483, 487-88 (2007) (consideration of petition for discretionary review by Ninth Circuit of judgment of Guam Supreme Court). Likewise, a court of appeals may extend the time to petition for certiorari by vacating and re-entering its judgment. *See, e.g.*, *Wilkins v. United States*, 441 U.S. 468, 469-70 (1979) (per curiam); *Doherty v. United States*, 404 U.S. 28, 29 (1971) (per curiam); *Finn*, 219 F.2d at 904. But Buckles's Rule 4-1(e) motion to us did not seek rehearing, entry of a new judgment, or anything else that would have restarted the clock for purposes of the 90-day period for seeking certiorari. Recall of the mandate, without more, did not restart the 90-day clock, and the time to petition for certiorari ran from the denial of rehearing.

Buckles argues that *Wilkins* permits a court of appeals, in some circumstances, to vacate its prior judgment and enter a new one solely to enable the filing of a timely petition for certiorari. We agree with that characterization of *Wilkins*. 441 U.S. at 468-69. But *Wilkins* is unavailing because our order in Buckles's case only recalled the mandate. It did not enter a new judgment affirming his conviction.

**[5]** Nor did the Supreme Court's denial of Buckles's untimely petition for certiorari create a new "date on which the judgment of conviction bec[ame] final." 28 U.S.C. § 2255(f)(1). Unlike the 90-day deadline for seeking certiorari review of a civil judgment, which is jurisdictional, the 90-day deadline for seeking review of a criminal judgment "may be waived because '[t]he procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion.' " *Bowles v. Russell*, 551 U.S. 205, 212 (2007) (quoting *Schacht v. United States*, 398 U.S. 58, 64 (1970)). *Cf. id.* at 211-12; 28 U.S.C. § 2101(c); Sup. Ct. R. 13(2). Because the Supreme Court is free to consider late criminal petitions, its Clerk has adopted the following practice:

> The Clerk's Office will . . . accept untimely criminal (but not civil) petitions for docketing, and transmit them to the Court with a notice that they have been filed out of time. Most of these petitions, like other petitions, are denied without comment, so it is impossible to tell whether the tardiness of the petitions is the reason (or part of the reason) for the Court's action. All that can be said is that during the past 25 years, none of the criminal petitions that have been filed tardily by defendants — and there have been a number — have been granted . . . .

EUGENE GRESSMAN ET AL., SUPREME COURT PRACTICE, § 6.1(e), at 391 (9th ed. 2007).

The Supreme Court has not allowed late filings to toll AEDPA's statute of limitations. *See, e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (28 U.S.C. § 2244(d)(1)(A) not tolled by untimely state postconviction petition because "a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction motions. This would turn § 2244(d)(2) into a *de facto* extension mechanism . . . and open the door to abusive delay."). On a similar ratio-

nale, we have held that a state supreme court's dismissal of a notice of appeal as untimely does not constitute the "conclusion of direct review" — and does not restart the statute of limitations — under § 2244(d)(1)(A). *Randle v. Crawford*, 604 F.3d 1047, 1054-55 (9th Cir. 2010). We reasoned that "[i]f the one-year limitations period were made contingent on the resolution of a petitioner's attempt to file an untimely notice of appeal, a petitioner could indefinitely delay the commencement of the one-year period by simply waiting to file such notice until after the normal expiration date." *Id.* We are unwilling to treat the unexplained and routine denial of criminal certiorari petition that the Supreme Court's Clerk has labeled untimely as an indication that the Court forgave the untimeliness of Buckles's petition, thereby restarting the one-year limitations period of § 2255(f)(1).

## B. Equitable Tolling

**[6]** Buckles argues that even if his § 2255 motion was untimely, we should equitably toll AEDPA's statute of limitations. A § 2255 movant is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418). The movant must show that the extraordinary circumstances " 'were the cause of his untimeliness.' " *Bryant v. Ariz. Att'y Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2006) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)). Buckles identifies two circumstances that he argues prevented him from timely filing. He points to counsel's failure to respond to his request for assistance in filing his Rule 4-1(e) motion, and the misinformation that Buckles declares was provided to his sister Weinberger by our court's Clerk's office.

Buckles states that, despite repeated requests, counsel did not assist him in preparing and filing his Rule 4-1(e) motion. If so — and we emphasize that counsel has not been heard on

the matter — counsel's conduct violated not only Rule 4-1(e), which states that "[i]t is the duty of retained counsel to assist the client in preparing and filing a motion for appointment of counsel and a financial affidavit," but also basic principles of professional responsibility. For example, the Montana Rules of Professional Conduct direct that "a lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued," MONT. RULES OF PROF'L CONDUCT R. 1.2; that a lawyer "shall act with reasonable diligence and promptness in representing a client," *id.* R. 1.3; and that a lawyer "shall reasonably consult with the client about the means by which the client's objectives are to be accomplished." *Id.* R. 1.4(a)(2).

In *Holland*, the Supreme Court held that an attorney's failure to file a federal habeas petition despite his client's request to do so, and failure to communicate with his client despite letters and phone calls requesting information, was "professional misconduct that . . . could . . . amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling." 130 S. Ct. at 2563. *Holland* referred specifically to the types of ethical violations alleged here: the failure "to communicate with . . . clients" and "to implement clients' reasonable requests," as well as the imperative "never to abandon a client." *Id.* at 2564. Counsel's misconduct, as alleged, resembles that described in *Holland*. Counsel "failed to file" Buckles's Rule 4-1(e) motion "despite [Buckles's] many letters that repeatedly emphasized the importance of his doing so"; "did not do the research necessary to find out the proper filing date, despite [Buckles's] letters that went so far as to identify the applicable legal rules"; and "failed to communicate with his client . . . despite various pleas." *Id.* at 2564. The misconduct in *Holland* continued over a period of years, but this is a difference in degree, not in kind. *See also id.* (citing *Spitsyn*, 345 F.3d at 800-02 ("extraordinary circumstances" sufficient to warrant equitable tolling where counsel failed to file client's habeas petition and ignored communica-

tions from client and client's mother)); *Porter v. Ollison*, 620 F.3d 952, 960 (9th Cir. 2010) (interpreting *Holland* to treat "violations of canons of professional responsibility" as evidence that attorney's conduct was "extraordinary").

**[7]** Nonetheless, we conclude that counsel's alleged misconduct does not entitle Buckles to equitable tolling because counsel's inaction had no effect on the timeliness of Buckles's § 2255 motion. That is, we conclude that Buckles has not demonstrated the necessary causal link between counsel's alleged actions and the untimeliness of the § 2255 motion now before us. *See Spitsyn*, 345 F.3d at 799. The question before us is not whether the untimeliness of Buckles's certiorari petition should be excused. Rather, the question is whether the untimeliness of his § 2255 motion should be excused. Once we denied Buckles's Rule 4-1(e) motion on the merits, Buckles had more than one year within which to file his § 2255 motion. That he failed to do so is not attributable to counsel. *See Randle*, 604 F.3d at 1058 (counsel's failure to file a timely notice of appeal from a state conviction "had little to no bearing on [petitioner's] ability to file a timely federal habeas petition. Counsel's failure . . . simply meant that [petitioner] had one year from the expiration of his time to file a notice of appeal in which to initiate a federal habeas action — it did not prevent him from filing the petition.").

**[8]** Buckles's claim that he relied detrimentally on the advice that he declares this court's Clerk provided to his sister Bonnie Weinberger has more merit. We have allowed equitable tolling to petitioners who have relied detrimentally on our incorrect statements of the law. *See, e.g.*, *Townsend v. Knowles*, 562 F.3d 1200, 1205-06 (9th Cir. 2009), *abrogated on other grounds by Walker v. Martin*, 131 S. Ct. 1120 (2011); *Harris v. Carter*, 515 F.3d 1051, 1055-56 (9th Cir. 2008). We have also suggested that a litigant who is "affirmatively misled" by a court's erroneous instructions may be entitled to tolling. *Brambles v. Duncan*, 412 F.3d 1066, 1070 (9th Cir. 2005). *See also Pliler v. Ford*, 542 U.S. 225, 235 (2004)

(O'Connor, J., concurring). Other circuits have extended these principles to misinformation provided by a court clerk. *See, e.g.*, *Coppage v. McKune*, 534 F.3d 1279, 1281-82 (10th Cir. 2008) (prisoner excused from checking status of state post-conviction motion during period when clerk assured prisoner that court would not act); *Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (tolling where clerk of state supreme court failed to notify petitioner of decision denying relief, as clerk had promised). *Cf. Corjasso v. Ayers*, 278 F.3d 874, 878-80 (9th Cir. 2002) (tolling where pro se habeas petition mishandled by district court clerk).

If it is true that Buckles's sister was given erroneous advice on which Buckles detrimentally relied, then he may be entitled to equitable tolling. "[T]he purpose of the equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having his day in court,' " and to " 'prevent the unjust technical forfeiture of causes of action.' " *Harris*, 515 F.3d at 1055 (quoting *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004)). *See also Holland*, 130 S. Ct. at 2563 ("[C]ourts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which if strictly applied, threaten the 'evils of archaic rigidity.' " (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944))).

**[9]** Buckles states that he took this court's Clerk's office at its word and proceeded on the assumption that he had 90 days from the denial of his Rule 4-1(e) motion to petition for certiorari. Buckles petitioned in what he understood to be a timely manner. The Supreme Court Clerk's letter of September 14, 2007 told Buckles that his petition was late, but also that his petition had been "filed," "placed on the docket," and assigned a case number. The Supreme Court's Clerk provided Buckles with a form "for notifying opposing counsel that the case was docketed." Buckles followed up within a week by mailing the Court a declaration detailing the procedural his-

tory of his case, including a description of the advice his sister received from our court's Clerk's office, and disputing the Supreme Court Clerk's characterization of the petition as untimely. No further correspondence issued from the Court until its summary denial of certiorari on October 15, 2007, which was Buckles's first and only indication that his petition had been denied.

**[10]** Buckles could have concluded that the Court credited his explanation, excused his lateness, and denied his petition on the merits. The Court's order stated that the petition had been "denied" rather than "dismissed," which could have indicated a merits disposition to Buckles. *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) ("[A]lthough the order was unexplained, the nature of the disposition ('dismissed' rather than 'denied') . . . indicated that the basis was procedural default." (discussing *Coleman v. Thompson*, 501 U.S. 722, 727-28 (1991)). The surrounding circumstances would have supported this interpretation. Buckles was told that his petition had been "docketed." He supplied an explanation for his late filing, and the Supreme Court denied his petition without any indication of a disposition on the ground of untimeliness. In these circumstances, Buckles, a pro se litigant, could reasonably have taken the Court's summary order as a denial on the merits. *Cf. Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.")

It is impossible to ascertain the decisional basis for the Court's summary denial of certiorari. *See Nunnemaker*, 501 U.S. at 803 ("[S]ometimes, . . . the basis of the decision is not merely undiscoverable, but nonexistent. . . . [M]any formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial."). But we do not need to do so in order to

resolve Buckles's request for equitable tolling. We need only determine that Buckles could reasonably have inferred from the processing of his petition for certiorari — filing, notice of lateness, explanation of lateness, apparent merits denial — that his petition was timely, in harmony with the misinformation allegedly provided by this court's Clerk's office.

**[11]** If the facts are as Buckles alleges, he may be entitled to equitable tolling. But at this point Buckles has only provided a hearsay declaration to establish that this court's Clerk's office provided his sister with inaccurate advice. Moreover, the record does not reflect what, if anything, Buckles did during the 363-day period between the Supreme Court's denial of his petition for certiorari and the filing of his § 2255 motion to verify his belief that his petition for certiorari was timely, and that he had correctly calculated the filing deadline for his § 2255 motion. The Supreme Court Clerk's letter advising Buckles that his petition for certiorari was "late" alerted him to the possibility that his conviction had become final on July 2, 2007 — as we conclude it did — thus leaving him less time to seek § 2255 relief than he had thought. Buckles could have taken additional steps to confirm that he had correctly calculated the filing deadline. On the record so far developed, we cannot conclude that Buckles has conclusively shown that "he has been pursuing his rights diligently," as would be necessary to entitle him to equitable tolling. *Holland*, 130 S. Ct. at 2562.

**[12]** Where "there are 'circumstances consistent with petitioner's petition and declaration under which he would be entitled to . . . equitable tolling,' " but the record does not conclusively establish the entitlement, "remand for factual development of the record is the appropriate course of action." *Mendoza v. Carey*, 449 F.3d 1065, 1071 (9th Cir. 2006) (quoting *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam), *rev'd on other grounds sub nom. Pliler v. Ford*, 542 U.S. 225 (2004)). Because the district court did not consider Buckles's request for equitable

tolling or develop a factual record, we remand. *See Ford v. Hubbard*, 308 F.3d 1086, 1107 (9th Cir. 2002) ("[E]quitable tolling issues 'are highly fact-dependent, and . . . the district court is in a better position to develop the facts and assess their legal significance in the first instance.' " (quoting *Whalem/Hunt*, 233 F.3d at 1148)). On remand, Buckles must substantiate his contention that the Ninth Circuit Clerk provided his sister with misinformation. He must also demonstrate his ongoing diligence to verify the correct deadline for filing his § 2255 motion, keeping in mind that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence," *Holland*, 130 S. Ct. at 2565 (internal quotation marks and citations omitted).

## Conclusion

**[13]** We conclude that Buckles's § 2255 motion was untimely. However, we conclude that Buckles may be entitled to equitable tolling. Accordingly, we vacate the dismissal of the § 2255 motion and remand for further proceedings.

**VACATED AND REMANDED.**