# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51123

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DERRICK WHEATEN,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The district court dismissed Derrick Wheaten's motion pursuant to 28 U.S.C. § 2255, concluding that it was barred by the statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[1]  We agree with the district court that Wheaten's filing of an untimely petition for writ of certiorari and the Supreme Court's subsequent denial of that petition without comment did not reset or extend the date on which the judgment of his conviction became final.  We accordingly affirm the district court's denial of the § 2255 motion.

---

[1] 28 U.S.C. § 2255(f).

No. 14-51123

**I**

Wheaten pleaded guilty, in federal district court, to aiding and abetting the possession with intent to distribute cocaine base and was sentenced to 132 months of imprisonment. In Wheaten's direct appeal, this court affirmed that conviction and sentence on March 14, 2012,[2] resulting in a deadline of June 12, 2012, to petition the Supreme Court for a writ of certiorari.[3] On May 30, 2012, Wheaten, through counsel, filed a motion to extend the certiorari petition deadline to August 11, 2012, which the Supreme Court denied on June 7, 2012. Despite the passing of the June 12 deadline, Wheaten's counsel filed a certiorari petition on July 5, 2012. The petition was placed on the Supreme Court's docket with a notation as to its untimeliness.

The Government filed a memorandum in response to Wheaten's certiorari petition on July 31, 2012. In that filing, the Government stated that if the Supreme Court chose to "overlook" the untimeliness of Wheaten's petition, then certiorari should be granted, the judgment vacated, and the case remanded for further consideration in light of *Dorsey v. United States*.[4] The Supreme Court denied the petition for certiorari without comment on October 1, 2012.[5]

On September 10, 2013, at the earliest, Wheaten filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The Government filed a motion to dismiss the § 2255 motion as time-barred, arguing that the judgment of conviction became final one year after Wheaten's June 12, 2012 deadline to file a certiorari petition.

---

[2] *United States v. Wheaten*, 465 F. App'x 321, 321, 324 (5th Cir. 2012) (per curiam).

[3] SUP. CT. R. 13(1) ("[A] petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment.").

[4] 132 S. Ct. 2321 (2012).

[5] *Wheaten v. United States*, 133 S. Ct. 298 (2012) (mem.).

No. 14-51123

The district court granted the Government's motion and denied Wheaten's motion. The district court agreed with the Government that the judgment became final when Wheaten's time for filing a certiorari petition expired on June 12, 2012, and held that the Supreme Court's denial of the untimely petition without comment did not restart or extend the limitations period. The district court further held that Wheaten was not entitled to equitable tolling. The district court granted Wheaten a certificate of appealability, concluding that its decision on the timeliness question was in tension with a footnote from a prior decision of this court.[6] Wheaten appealed.

## II

We first consider whether the date on which the judgment of conviction became final for purposes of § 2255(f)(1) was June 12, 2012, the last date on which Wheaten could timely file a petition for writ of certiorari, or October 1, 2012, the date that the Supreme Court denied, without comment, his late-filed certiorari petition. If Wheaten's judgment of conviction became final on the earlier date, then his § 2255 motion was untimely. We review de novo the district court's conclusion that Wheaten's § 2255 motion was untimely.[7]

Under AEDPA, a one year statute of limitations governs habeas motions filed by federal inmates.[8] That one year period runs from the latest of four triggering events, including, relevant here, "the date on which the judgment of conviction becomes final."[9]

Although the statute does not define when a conviction "becomes final" for purposes of federal habeas review of a federal conviction, the Supreme Court stated in *Clay v. United States* that "[f]inality attaches when [the

---

[6] *See United States v. Redd*, 562 F.3d 309, 312 n.3 (5th Cir. 2009).

[7] *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008).

[8] 28 U.S.C. § 2255(f).

[9] *Id.* § 2255(f)(1).

3

No. 14-51123

Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."[10]  The Supreme Court's rules of procedure provide that a defendant has ninety days after the court of appeals affirms the conviction to file a certiorari petition,[11] unless an extension is obtained.  In *Clay*, the Court decided the "narrow" question of when a judgment in a federal prosecution becomes final if the defendant's direct appeal to a court of appeals is unsuccessful and the defendant does not petition for a writ of certiorari from the Supreme Court.[12]  The Government contended in *Clay* that the judgment became final when the court of appeals' mandate issued (the mandate had automatically issued 21 days after entry of the court of appeals' judgment).  The defendant disagreed, contending that the judgement of conviction had become final 69 days later, at the end of the 90-day period for filing a petition for writ of certiorari.  The Court held that "[f]or the purpose of starting the clock on § 2255's one-year limitation period," the "judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."[13]

We conclude that the general statement in *Clay* that "[f]inality attaches when [the Supreme] Court . . . denies a petition for a writ of certiorari" was not intended by the Supreme Court to govern the situation in which an *untimely* petition for writ of certiorari is summarily denied.  The Court did not consider in *Clay* whether the denial of an untimely petition for certiorari, without comment, affected the § 2255 limitations period, and the Court has not addressed that question in any of its other decisions.  If the Court's statement

---

[10] *Clay v. United States*, 537 U.S. 522, 527 (2003).
[11] SUP. CT. R. 13(1).
[12] *Clay*, 537 U.S. at 524.
[13] *Id*. at 525.

were applied without regard to the timeliness of a petition for certiorari, then a defendant could extend the time for filing a motion under § 2255 for years by filing and obtaining summary denial of a late petition for certiorari. We are unwilling to read *Clay* so expansively.

Wheaten relies on a footnote from this court's decision in *United States v. Redd*, in which we stated:

> Even though Redd filed his certiorari petition more than ninety days after this court had affirmed the denial of his rule 33 motion, the fact that the Supreme Court considered and denied the petition started the statute of limitations from the date of the denial of the writ. "Finality attaches when this Court denies a petition for a writ of certiorari."[14]

However, this statement in *Redd* had no bearing on any issue actually decided in that appeal. The statement is *dicta* and is not a statement of the law in this Circuit that is binding on our panel.[15]

In *Redd*, we were concerned only with whether a defendant's Rule 33 motion for a new trial filed after the deadline for filing a notice of appeal tolls the date of finality of the judgment of conviction for purposes of § 2255(f)(1).[16] We were not required to resolve the effect of the denial of an untimely certiorari petition. The judgment of our court that affirmed Redd's conviction and sentence was entered in December 2003.[17] Redd did not file a petition for writ

---

[14] *United States v. Redd*, 562 F.3d 309, 312 n.3 (5th Cir. 2009) (alteration omitted) (quoting *Clay*, 537 U.S. at 527).

[15] *See, e.g.*, *United States v. Segura*, 747 F.3d 323, 328-29 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law." (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)); *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000).

[16] *Redd*, 562 F.3d at 312.

[17] *Id.* at 311.

of certiorari seeking review of that judgment within 90 days of its issuance.[18] He had, however, filed a motion for a new trial while his 2003 appeal was pending, and in our December 2003 decision, we remanded the motion for new trial to the district court for disposition.[19] The district court denied the motion, and this court affirmed that ruling on August 12, 2005.[20] Redd filed a petition for writ of certiorari regarding the denial of his Rule 33 motion on August 4, 2006.[21] The August 4, 2006 petition for certiorari was untimely, and it was denied without comment by the Supreme Court on October 2, 2006.[22] Redd then filed, in November 2006, a § 2255 motion seeking habeas relief from his conviction and sentence that the district court denied as untimely.[23] We affirmed, and in discussing the case's history, we gratuitously opined in footnote 3 that even though Redd's certiorari petition was untimely, "the fact that the Supreme Court considered and denied the petition started the statute of limitations from the date of the denial of the writ," citing *Clay*.[24] However, whether the denial of Redd's untimely 2006 petition for certiorari affected the § 2255 limitations period was irrelevant to our decision regarding the limitations period applicable to our December 2003 judgment. We held that Redd's 2003 Rule 33 motion for a new trial did not stop the clock for purposes of § 2255(f)(1), and that our December 2003 judgment affirming his conviction became final 90 days after its entry.[25] We reasoned that a criminal defendant has up to three years, in some circumstances, to file a motion for new trial, and we rejected the proposition that a defendant could extend the limitations

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Redd v. United States*, 549 U.S. 930 (2006).

[23] *Redd*, 562 F.3d at 311.

[24] *Id.* at 312 n.3.

[25] *Id.* at 312-13.

period in § 2255(f) by filing a Rule 33 motion.[26]  We therefore affirmed the district court's conclusion that Redd's § 2255 motion challenging the conviction affirmed in 2003 was untimely.[27]  Footnote 3's statement was unnecessary to the judgment we rendered in *Redd*.[28]  We consider that statement only to the extent that it is persuasive.  Our determination of whether the Supreme Court's denial of Wheaten's untimely petition for certiorari affected the finality of the judgment convicting him is a question that we consider *de novo*.

Wheaten argues that the Supreme Court Clerk's acceptance and transmission of his untimely petition to the Court, and the Court's consideration and denial of it, "reopened direct review" and "restored the pendency of the direct appeal," such that the one-year period in which he was required to file his habeas motion began the day the Supreme Court denied the certiorari petition.  He argues that the Supreme Court implicitly excused the lateness of his certiorari petition, which is within its discretion,[29] by docketing (with a notation as to its lateness) and considering it, even though his motion to extend the time for filing had been expressly denied in a written order before he filed his untimely petition.

The Supreme Court's docketing and denial without comment of Wheaten's certiorari petition does not indicate that it actually exercised its discretion and excused the lateness of Wheaten's petition and therefore

---

[26] *Id.* at 313.

[27] *Id.* at 312-13.

[28] *In re Hearn*, 376 F.3d 447, 453-54 (5th Cir.) ("We find . . . that [prior case's] limitation on *McFarland* does not constitute an alternative rationale or an alternative holding, but rather a mere judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential." (internal quotation marks omitted)), *decision clarified on other grounds on denial of reh'g*, 389 F.3d 122 (5th Cir. 2004).

[29] *See, e.g.*, *Bowles v. Russell*, 551 U.S. 205, 212 (2007).

"reopen[ed] direct review."[30]    Additionally, the circumstances of this case suggest that the lateness was not excused.  As noted earlier, in its response to Wheaten's certiorari petition, the Government agreed that Wheaten's petition should be granted, the judgment vacated, and the case remanded *if* the Supreme Court chose to excuse the petition's lateness.  The fact that the Supreme Court denied the petition in spite of the Government's concession strongly suggests that the Court did *not* exercise its discretion to consider the merits of the untimely petition and instead denied the petition *because of* its untimeliness.

In light of the Supreme Court's practice of denying late-filed criminal petitions without any explanation, were we to agree with Wheaten, a defendant could bypass § 2255(f)(1)'s timeliness requirement altogether by filing a certiorari petition months or even years after the deadline.  This would render the one-year limitation under § 2255(f) a nullity in many circumstances,[31] and we are unwilling to consider the Supreme Court's denial of a certiorari petition without comment as an implicit grant of a motion for extension of time and consequent disposition of the untimely petition on its merits.

---

[30] *See* STEPHEN M. SHAPIRO ET AL., SUPREME COURT PRACTICE, § 6.1(e), at 391 (10th ed. 2013):

> The [Supreme Court] Clerk's Office will . . . accept untimely criminal (but not civil) petitions for docketing, and transmit them to the Court with a notice that they have been filed out of time.  Most of these petitions, like other petitions, are denied without comment, so that it is impossible to tell whether the tardiness of the petitions is the reason (or part of the reason) for the Court's action.  All that can be said is that during the past 30 years, none of the criminal petitions that have been filed tardily by defendants—and there have been a number—has been granted. . . .

[31] *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions.  This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.").

No. 14-51123

A different conclusion would be difficult, if not impossible, to reconcile with the reasoning in a recent decision of our court in *Catchings v. Fisher*.[32] There, a defendant convicted in state court failed to petition the Supreme Court for direct review within the required ninety-day period.[33] Over one year later, he filed an untimely certiorari petition, which the Supreme Court denied without comment.[34] The inmate then filed a federal habeas petition under § 2254, arguing that the date his one-year limitations period commenced was the date on which the Supreme Court denied his certiorari petition, rather than the date his period for seeking Supreme Court review actually expired.[35] We disagreed, holding that the fact that "Catchings eventually filed a petition for certiorari, a year late, does not mean that the limitations period did not begin to run when he missed the deadline for doing so."[36] We continued:

> A contrary rule would permit any petitioner who missed the 90-day certiorari deadline to file a petition for certiorari years later and argue that his one-year limitations period did not begin until that late petition was denied. We thus decline to read the Supreme Court's apparent practice of denying late petitions without explanation, rather than simply refusing to file them, as reviving the direct review of tardy petitioners for purposes of section 2244(d)(1)(A).[37]

Although *Catchings* arose in the context of a § 2254 petition, the rationale logically extends to § 2255.

Wheaten relies upon the Supreme Court's decision in *Jimenez v. Quarterman*,[38] but it did not address the issue in the present appeal. In *Jimenez*, after a state criminal defendant missed his state-court deadline to

---

[32] 815 F.3d 207 (5th Cir. 2016).
[33] *Id*. at 208.
[34] *Id.*
[35] *Id*. at 209.
[36] *Id*. at 210.
[37] *Id*. at 210-11.
[38] 555 U.S. 113 (2009).

file a *pro se* response to his attorney's brief pursuant to *Anders v. California*—which had opined that the appeal had no merit—the defendant petitioned in state court for an extension of his deadline.[39]  The Texas Court of Criminal Appeals granted that extension six years after his appeal had been dismissed and "ordered" him "returned to that point in time at which he may [have] give[n] written notice of appeal. . . . For purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the sentence had been imposed on the date that the mandate of this Court issues."[40]  The defendant's conviction was eventually affirmed, and he filed a federal habeas petition under § 2254.[41]  In response to the habeas petition, the State argued that finality had attached to the conviction when the Texas court of appeals dismissed the defendant's appeal, and that the state court's subsequent reopening of the appeal had no effect on AEDPA's one-year limitation.[42]  The Supreme Court disagreed, holding that "once the Texas Court of Criminal Appeals reopened direct review of [Jimenez's] conviction . . . [the] conviction was no longer final for purposes of § 2244(d)(1)(A)."[43]  The Texas court had "restore[d] the pendency of the direct appeal," which reset finality.[44]

In *Jimenez* the Supreme Court cautioned that the mere "possibility that a state court *may* reopen direct review 'does not render convictions and sentences that are no longer subject to direct review nonfinal.'"[45]  It held that "where a state court has *in fact* reopened direct review, the conviction is

---

[39] *Jimenez*, 555 U.S. at 115-16.

[40] *Id.* at 116 (quoting *Ex parte Jimenez*, No. 74,433 (per curiam), App. 26, 27).

[41] *Id.* at 116-17.

[42] *Id.* at 117.

[43] *Id.* at 120.

[44] *Id.* (alteration in original) (internal quotation marks omitted).

[45] *Id.* at 120 n.4 (emphasis added) (quoting *Beard v. Banks*, 542 U.S. 406, 412 (2004)).

rendered nonfinal for purposes of § 2244(d)(1)(A) during the pendency of the reopened appeal."[46]

In holding that Wheaten's untimely direct review certiorari petition did not reset his one-year deadline for filing a § 2255 motion, we are also persuaded by the Ninth Circuit's reasoning in *United States v. Buckles*, which confronted the question presently before us.[47] The *Buckles* panel looked to the Supreme Court's decision in *Pace v. DiGuglielmo*, which held that an untimely state habeas petition was not "properly filed" under § 2254(d)(2)—which allows AEDPA's one-year limitations period to toll during the pendency of properly filed state post-conviction proceedings—even though there were "exceptions to [the] timely filing requirement" in the state court and the clerk of the state court had "accept[ed]" the filing.[48] *Pace*'s holding comports with the *Jimenez* decision's reasoning that the "possibility" of an exception being made for untimeliness is not relevant to AEDPA's one-year limitation, but that the actual employment of the exception is.[49] Although the "properly filed" requirement at issue in *Pace* presented a different question, the Ninth Circuit in *Buckles* applied the same logic to a § 2255 motion.[50] It took note of the Supreme Court's practice of denying untimely certiorari petitions without comment and expressed an "unwilling[ness] to treat the unexplained and routine denial of [a] criminal certiorari petition that the Supreme Court's Clerk has labeled untimely as an indication that the Court forgave the untimeliness

---

[46] *Id.* (emphasis added).

[47] 647 F.3d 883, 888-89 (9th Cir. 2011).

[48] 544 U.S. 408, 413-15 (2005).

[49] *See Jimenez*, 555 U.S. at 120 n.4.

[50] *Buckles*, 647 F.3d at 888-89.

No. 14-51123

of Buckles's petition, thereby restarting the one-year limitations period of § 2255(f)(1)."[51]

Accordingly, we hold that when a federal defendant files an untimely certiorari petition seeking direct review of his conviction, and the Supreme Court gives no indication that it excused the untimeliness, the denial of the petition without comment does not affect finality for purposes of § 2255(f)(1)'s one-year limitations period. The dicta in *United States v. Redd* suggesting otherwise is not binding.[52]    Wheaten's § 2255 motion was, therefore, untimely.[53]

## III

Wheaten argues in the alternative that the filing deadline should be equitably tolled and the § 2255 motion's lateness excused. We note initially that the parties dispute whether the district court denied equitable tolling as a matter of law, such that our review must be de novo, or instead denied it in an exercise of its discretion, such that we review for abuse of that discretion. We need not resolve the proper standard of review because even reviewing de novo, Wheaten has not established that equitable tolling is appropriate here.[54]

---

[51] *Id.* (citing EUGENE GRESSMAN ET AL., SUPREME COURT PRACTICE, § 6.1(e), at 391 (9th ed. 2007)); *accord United States v. Bendolph*, 409 F.3d 155, 158 n.5 (3d Cir. 2005) (en banc) ("Bendolph did not get the benefit of tolling for the time the petition was under consideration by the Supreme Court because the petition was untimely and therefore not properly filed.").

[52] *See* 562 F.3d 309, 312 n.3 (5th Cir. 2009).

[53] Finally, the unpublished supplemental authority from the Eleventh Circuit to which Wheaten brings our attention in a letter filed pursuant to Federal Rule of Appellate Procedure 28(j) is inapposite. *See Ortiz v. Sec'y, Dep't of Corr.*, 621 F. App'x 624 (11th Cir. 2015). Contrary to Wheaten's assertions, the Eleventh Circuit there did not state that the inmate's certiorari petition was untimely; it did not address that question. *Id.* In fact, our review of the Supreme Court's docket for Ortiz's direct appeal demonstrates that the certiorari petition was timely. *See Ortiz v. Florida*, No. 06-7488, dkt. sheet, *available at* http://www.supremecourt.gov/docketfiles/06-7488.htm.

[54] *See United States v. Petty*, 530 F.3d 361, 365 (5th Cir. 2008) (per curiam) ("Petty bears the burden of establishing equitable tolling is appropriate.").

No. 14-51123

To be entitled to equitable tolling, a movant must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[55]  Our inquiry is guided by the principle that equitable tolling of AEDPA's one-year limitations period is available only in "rare and exceptional circumstances."[56]  It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."[57]

Wheaten claims that abandonment by his direct appeal attorney and a misleading statement from the Supreme Court Clerk justify equitable tolling. The district court held that neither of these circumstances is "extraordinary." We agree.

In assessing when an attorneys' conduct may amount to "extraordinary circumstances," the Supreme Court has differentiated between "garden variety claim[s] of excusable neglect, such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline," which do "not warrant equitable tolling," and abandonment by counsel.[58]  Wheaten claims that his appellate lawyer "misled" him into believing that a timely certiorari petition would be filed, missed the deadline, and then failed to inform Wheaten about the missed deadline and the fact that the Supreme Court had denied his extension request until almost a month after the deadline had passed.

---

[55] *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

[56] *Felder v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000) (citing *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)).

[57] *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (per curiam) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)), *abrogated on other grounds by Causey v. Cain*, 450 F.3d 601, 605 (5th Cir. 2006).

[58] *Compare Maples v. Thomas*, 132 S. Ct. 912, 923-24 (2012), *with Holland*, 560 U.S. at 651-52 (2010).

No. 14-51123

Our review of the record reveals that Wheaten's appellate attorneys' conduct does not cross the line between "garden variety" neglect and attorney abandonment. In the cases in which the Supreme Court has recognized that attorney abandonment may result in equitable tolling, the movant's attorney "failed to communicate with [the movant] over a period of years"[59] or did not in fact represent the movant in any capacity whatsoever during the movant's period for filing an appeal, even though the attorney failed to file a motion to withdraw.[60] In contrast, here, Wheaten's appellate counsel sent him four letters between May 2012, when she filed her motion for an extension with the Supreme Court, and October 2012, when she informed Wheaten that the Supreme Court had denied his certiorari petition. Counsel apprised him of the Supreme Court's denial of her extension request and of the fact that she filed his petition late. She provided him a habeas legal guide. This conduct does not constitute abandonment. More importantly, Wheaten readily acknowledges that he learned of the Supreme Court's denial of the motion for an extension, and of the missed deadline, within less than a month of that deadline's expiration. When he learned of these circumstances, he still had more than eleven months remaining on his AEDPA clock. Accordingly, counsel's failures cannot be said to have "stood in his way and *prevented* timely filing" of his § 2255 motion.[61]

Wheaten alleges that in a telephone conversation days after his attorney submitted the untimely petition, the Supreme Court Clerk told him that "your

---

[59] *See Holland*, 560 U.S. at 651-52.

[60] *See Maples*, 132 S. Ct. at 923-24.

[61] *See Holland*, 560 U.S. at 649 (emphasis added) (internal quotation marks omitted); *see also Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

certiorari [petition] has been docketed, accepted and is now pending.  And after this Court's ruling, you have one-year to file a habeas corpus [*sic*] if the [C]ourt doesn't rule in your favor."  Wheaten claims that this incorrect advice misled him into believing that the Supreme Court's denial of his petition reset his AEDPA clock, and that this advice therefore constitutes an extraordinary circumstance.  We disagree.

In *United States v. Petty*, the defendant filed his § 2255 motion more than one year after his deadline for filing a certiorari petition had run.  He sought equitable tolling of that deadline based on incorrect legal advice received from the district court clerk.[62]  Specifically, an assistant clerk of the court incorrectly told the defendant that his conviction had been affirmed by our court almost one month later than it actually had been—incorrectly referring to the date the mandate issued rather than the date the opinion was released.[63]  The defendant claimed he relied on this advice, and indeed his § 2255 motion would have been timely had the assistant clerk been correct.[64]  However, we affirmed the district court's denial of equitable tolling, holding that notwithstanding the defendant's *pro se* status, he "should have known that . . . the date the original opinion issued from this court[] was the relevant date for limitations purposes, not the date the mandate issued."[65]  We stressed that the defendant had otherwise twice been told the correct date of finality, which "should have alerted [him] to determine the actual date when the conviction became final," and held that "[h]is failure to do so is not an 'extraordinary circumstance' requiring equitable tolling of the AEDPA limitations period."[66]

---

[62] *See United States v. Petty*, 530 F.3d 361, 364-66 (5th Cir. 2008) (per curiam).

[63] *Id*. at 363.

[64] *Id.*

[65] *Id*. at 365.

[66] *Id*. at 366.

No. 14-51123

Similarly, here, Wheaten had been told at least two times that his certiorari petition was filed late.  The fact that we had not yet resolved the question underlying the timing of his appeal does not change the fact that Wheaten "should have elected to err on the side of caution and abide by the earlier of the two possible deadlines," as "a lack of knowledge of the law, however understandable it may be, does not ordinarily justify equitable tolling."[67]  This is so even with respect to issues that neither our court nor the Supreme Court had decided by the time the habeas movant's deadline passes.[68]

Wheaten had ample time to prepare and file his § 2255 motion after the Supreme Court denied his petition but before AEDPA's deadline passed.  His reliance on the Supreme Court Clerk's incorrect statement is not an "extraordinary circumstance," and does not demonstrate a diligent pursuit of his rights.  The facts of this case fall "far short of showing extraordinary circumstances necessary to support equitable tolling."[69]

Accordingly, we affirm the district court's denial of equitable tolling.

\*        \*        \*

For the reasons set forth above, we AFFIRM the judgment of the district court.

---

[67] *Flores v. Quarterman*, 467 F.3d 484, 486-87 (5th Cir. 2006) (per curiam) (internal quotation marks omitted) (denying equitable tolling even though state of the law was unclear when habeas petitioner missed deadline); *see also Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir. 2002) ("Although the application and interpretation of the AEDPA statute of limitations was somewhat unsettled during this period, we think that such uncertainty should have militated *against* taking an unnecessary risk by waiting to file a . . . habeas petition.").

[68] *Fierro*, 294 F.3d at 682-83 & n.14.

[69] *Petty*, 530 F.3d at 365 (internal quotation marks and citation omitted).